Eric Nielson #5327
Laura Nielson #15008
G. ERIC NIELSON & ASSOCIATES
4790 S. Holladay Blvd.
Holladay, Utah 84117
Phone: (801) 424-9088
Fax:     (801) 438-0199
ericnielson@ericnielson.com
lauranielson@ericnielson.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TREVOR T., CARRIE T., and B.T.,<br><br>  Plaintiffs,<br><br>vs.<br><br>CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD of CALIFORNIA, BEN MYERSON CANDY CO., Inc. dba WINE WAREHOUSE, WINE WAREHOUSE CUSTOM PPO PLAN,<br><br>  Defendants. | **COMPLAINT**<br><br>Case No.<br><br>Magistrate Judge |

**COME NOW** Trevor T., Carrie T., and B.T., collectively, individually, and through their undersigned counsel, complain and allege against the above-captioned defendants as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Trevor T. ("Trevor") and Carrie T. ("Carrie") are natural persons residing in Orange County, California. They are covered by a fully insured plan, The Wine Warehouse Custom PPO Plan ("the Plan"), provided through Trevor's employer, Ben Myerson Candy Co., Inc. dba Wine Warehouse ("Wine Warehouse"), who is also the plan administrator.

1

2. Plaintiff B.T. is a resident of Orange County, California. As a beneficiary of his father's health insurance plan, he received treatment at Elevations Seven Stars ("Elevations"), a licensed residential treatment facility in Syracuse, Utah from October 19, 2019 through January 16, 2020.

3. The Plan is an employee benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et. seq.

4. This Court has jurisdiction over this matter and venue is appropriate pursuant to 29 U.S.C. §1132(e)(2) and 29 U.S.C. § 1391(c) because the treatment took place in Syracuse, Utah and the appeals were written by a company located in Salt Lake City, Utah.

5. Plaintiffs seek payment of B.T.'s denied claims from November 5, 2019 through January 16, 2020, pursuant to 29 U.S.C. §1132(a)(1)(B).

6. Plaintiffs seek injunctive relief pursuant to 29 U.S.C. §1132(a)(3) and pursuant to the Mental Health Parity and Addiction Equity Act of 2008 ("the Parity Act").

7. Plaintiffs also seek an award of prejudgment interest and attorney's fees pursuant to 29 U.S.C. §1132(g).

**FACTUAL BACKGROUND**

8. Claims were submitted to the Plan by the Plaintiffs for B.T.'s treatment at Elevations.

9. Initially, California Physicians' Services dba Blue Shield of California ("BSCA") approved B.T.'s treatment at Elevations from October 19, 2019 through November 4, 2019.

10. On November 8, 2019, BSCA sent a letter denying dates of service November 5, 2019 through January 16, 2020. The denial letter stated, in part:

> You are taking care of yourself. You are taking your medication. You are doing better. You do not have a plan to hurt anyone. You do not have any

medical problems. Your family is available and supportive. It appears you can be treated in a few hours a day for several days a week (such as mental health intensive outpatient program or IOP) which is available.

The criteria or guideline applied to this decision:

2019 – 2020 Magellan Care Guidelines as adopted by Blue Shield's MHSA – Residential Behavioral Health, Child or Adolesvent, 23B-902-RES…

11. On March 16, 2020, Trevor, Carrie, and B.T. (collectively, "the T. Family") submitted a Level One Member Appeal.

12. In the appeal, the T. Family argued that B.T. had suffered emotional dysregulation, severe aggression, suicidal ideation, depression, anxiety, among other mental health issues. The T. Family described how B.T.'s suicidal thoughts increased in frequency and he had bigger and worse tantrums throughout August of 2019. The T. Family outlined how this came to a head on August 30, 2019, when B.T. began hitting Carrie and threatening to kill himself with a knife drawn.

13. The appeal outlines B.T. hitting Carried and threatening to kill himself with a knife drawn on September 8, 2019 and September 9, 2019. On September 9, 2019, B.T. asked to go to the hospital and Carrie took him to the Mission Hospital Emergency Room. He was admitted for observation for suicidal thoughts but released 5 hours later.

14. The appeal described B.T. hitting his mom, threatening to kill himself with a knife drawn, and destruction of property again on September 16, 2019, September 17, 2019, and September 18, 2019. Carried called for help on September 17, 2019 and received none. She discussed residential treatment on September 18, 2019, per the appeal.

15. The T. Family states in the appeal that, throughout September and October of 2019, B.T. experiences severe emotional dysregulation and threatens both himself and his family members. The day before his admission to Elevations, B.T. severely attacked his mother and father.

16. The appeal concluded with copious amounts of medical necessity evidence. Letters of medical necessity from multiple treating providers, the medical records from the multiple emergency room visits, mental health assessments, school documentation, etc. all outlining B.T.'s need for a more structured environment, such as the one Elevations could provide him.

17. In a letter dated April 17, 2020, BSCA upheld their denial of B.T.'s treatment at Elevations from November 5, 2019 through January 16, 2020.

18. The Glossary on pp. 114 of the Plan states the following for Medically Necessary:

1) Services that are Medically Necessary include only those which have been established as safe and effective, are furnished under generallt accepted professional standards to treat illness, injury or medical condition, and which, as determined by Blue Shield, are:
   a. Consistent with Blue Shield medical policy;
   b. Consistent with the symptoms or diagnosis;
   c. Not furnished primarily for the convenience of the patient, the attending Physician or other provider; and
   d. Furnished at the most appropriate level which can be provided safely and effectively to the patient.
2) If there are two or more Medically Necessary services that may be provided for the illness, injury or medical condition, Blue Shield will provide Benefits based on the most cost-effective service.
3) Hospital inpatient services which are Medically Necessary include only those services which satisfy the above requirements, require the acute bed-patient (overnight) setting, and which could not have been provided in the Physician's office, the outpatient department of a Hospital, or in another lesser facility without adversely affecting the patient's condition or the quality of medical care rendered. Inpatient services that are not Medically Necessary include hospitalication:
   a. For diagnostic studies that could have been provided on an outpatient basis;
   b. For medical observation or evaluation;
   c. For personal comfort;
   d. In a pain management center to treat or cure chronic pain; and

   e. For inpatient Rehabilitative Services that can be provided on an outpatient basis.

 4) Blue Shield reserves the right to review all claims to determine whether services are Medically Necessary, and may use the services of Physician consultants, peer review committees of professional societies or Hospitals, and other consultants…

19. Elevations is licensed and regulated by the State of Utah. Elevations provides services that are less intensive than acute hospitalization and more intensive than outpatient therapy. Elevations qualifies as an intermediate behavioral health facility under the MHPAEA. The Plan must administer benefits for intermediate behavioral health facilities in a way comparable to the administration of benefits for intermediate medical facilities.

20. Elevations meets the Plan's definition of a provider and is licensed by the State of Utah to provide intermediate residential treatment services.

21. The Plan covers intermediate medical and surgical care, including skilled nursing facility services, subacute rehabilitation facility services, and inpatient hospice services.

22. The T. Family exhausted their appeal rights.

## FIRST CAUSES OF ACTION

**(Claim for Benefits Under 29 U.S.C. §1132(a)(1)(B)) and Claim for Equitable Relief Pursuant to 29 U.S.C. §1132(a))**

2. ERISA imposes higher-than-marketplace standards on the Plan and other ERISA fiduciaries. It sets forth a special standard of care upon a plan fiduciary, namely that the administrator discharges all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits. 29 U.S.C. §1104(a)(1).

3. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that plan administrators provide a "full and fair review" of claim denials. 29 U.S.C. §1104(a)(1)(D) and §1133(2).

23.     The Plan's actions or failures to act constitute a breach of its fiduciary duties to the T. Family under 29 U.S.C. §1104 and §1133 in the following ways: 1) by failing to set forth the specific reasons for B.T.'s claim denial, written in a manner calculated to be understood by the T. Family;  2) by failing to provide a "full and fair review," as anticipated in ERISA's claims processing regulations, of the denial of the B.T.'s claim; 3) by developing and relying upon internal practices and policies that improperly restricted coverage in contravention of Plaintiffs' health insurance plans, ERISA, and the Parity Act; and 4) by failing to discharge all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits.

## SECOND CAUSE OF ACTION

### (Claim for Violation of the Parity Act Under 29 U.S.C. §1132(a)(3))

33.     The Parity Act is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the Parity Act.

34.     The Parity Act requires that if a group health plan provides both medical and surgical benefits as well as mental health or substance use disorder benefits, then it may not apply any "treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant ... treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(2)(i) (amended Jan. 13, 2014); *see also* IFRs Under the Parity Act, 75 Fed. Reg. at 5413.

35.     The Parity Act also requires that if a plan "provides mental health or substance use disorder benefits in any classification of benefits..., mental health or substance use disorder benefits must be provided in every classification in which medical/surgical benefits are provided." 29 C.F.R. § 2590.712(c)(2)(ii).

36. Impermissible nonquantitative treatment limitations under the Parity Act include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

37. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan restricted for B.T.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does the Plan restrict coverage of medical/surgical conditions based on medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner the Plan restricted coverage of treatment for B.T. at Elevations.

38. Specifically, the Plan's reviewers utilized internal processes and procedures that may have placed a limitation on the scope of services available for intermediate behavioral health care, while not limiting the scope of services available for intermediate medical or surgical benefits.

39. When the Plan receives claims for intermediate-level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. The Plan evaluated B.T.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

40. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan, as written or in operation,

use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

41. The violations of the Parity Act by the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

42. A declaration that the actions of the Defendants violate the Parity Act;

43. An injunction ordering the Defendants to cease violating the Parity Act and requiring compliance with the statute;

44. An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with the Parity Act;

45. An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of the Parity Act;

46. An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of the Parity Act;

47. An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

48. An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of the Parity Act; and

49. An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of the Parity Act.

50. 45. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A.

51. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

## **RELIEF**

52. WHEREFORE, the Plaintiffs seek relief as follows:

53. Judgment in the total amount that is owed for B.T.'s medically necessary treatment at Elevations under the terms of the Plan, plus pre- and post-judgment interest to the date of payment;

54. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

55. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

56. For such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 18th day of October, 2022.

G. ERIC NIELSON & ASSOCIATES
  /s/ Laura Nielson
Laura Nielson
*Attorney for Plaintiffs*